UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Gary Pogue,

      Plaintiff,

v.                                                          Case No. 15-12549

Speedway SuperAmerica, LLC,                  Sean F. Cox
                                                            United States District Court Judge

      Defendant.
_____/

## OPINION & ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

This is a premises liability case under Michigan law. Plaintiff filed suit against

Defendant after Plaintiff claims to have slipped on some ice at Defendant's gas station in

Canton, Michigan on March 8, 2015. The matter is currently before the Court on Defendant's

Motion for Summary Judgment. The parties have briefed the issues and the Court heard oral

argument on September 15, 2016. For the reasons set forth below, the Court shall GRANT the

motion.

## BACKGROUND

Plaintiff Gary Pogue ("Plaintiff" or "Pogue") filed suit against Defendant Speedway

SuperAmerica, LLC ("Defendant" or "Speedway") in state court. Speedway removed the action

to this Court, based upon diversity jurisdiction.

Following the close of discovery, Speedway filed the instant Motion for Summary

Judgment. This Court's practice guidelines, which are expressly included in the Scheduling

Order issued in this case, provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Docket Entry No. 6 at 3).

In compliance with this Court's guidelines, in support of their Motion for Summary Judgment, Speedway filed a "Statement of Material Facts Not In Dispute" (Docket Entry No. 13) ("Defs.' Stmt."). In response, Pogue filed a response to Speedway's Statement (Docket Entry No. 16) (Pl.'s Stmt.") but Pogue's Statement does not identify any claimed issues of fact for trial in it[1]. Pogue also denies some facts asserted by Speedway but provides no evidentiary support for those denials.

The following relevant material facts are gleaned from the evidence submitted by the parties, viewed in the light most favorable to Pogue, the non-moving party.

The present case arises out of an alleged slip and fall that occurred on March 8, 2015, at approximately 9:00 a.m. (Def.'s Stmt. & Pl.'s Stmt. at ¶ 1; Pl.'s Dep. at 19).

Pogue is a Michigan resident. (Compl. at 1). Pogue testified that it was dry and cold on

---

[1]Rather, Pogue inserts a "Counter Statement of Facts" in his Response Brief.

March 8, 2015.  (Pl.'s Dep. at 22).

Weather reports from the date of the incident, and the days preceding it, indicate that nearby Detroit Metro Wayne County Airport had temperatures ranging from 25 to 43 degrees. (Def.'s Stmt. & Pl.'s Stmt. at ¶ 9[2]; Def.'s Ex. G).  Those records indicate that while there was no precipitation on March 8, 2015, there was twelve inches of snow on the ground.  (*Id.*).

Still photos taken from surveillance video at the gas station on the date in question show that there was snow and/or snow banks on the grassy areas surrounding the gas station.  (Def.'s Ex. C).

On March 8, 2015, Pogue was in the process of moving his personal property into a new home. (Pogue Aff. at ¶ 2).  After departing his home, he noticed that the gas tank in his truck was nearly empty.  (*Id.* at ¶ 3).

Pogue pulled into a Speedway gas station on Ford Road in Canton, Michigan.  (Compl. at ¶ 4).   Pogue states that was the nearest gas station to him at the time he stopped.  (Pogue Aff. at ¶ 5).  He states that "it appeared that there was only one vacant gas pump available" and he pulled up next to it.  (*Id.* at ¶¶ 7-8).  Pogue testified that he was gassing up his truck so that he could move.  (Pogue Dep. at 32).

Pogue testified that he fell when he exited his vehicle to begin pumping gas.  (Def.'s Stmt. & Pl.'s Stmt. at ¶ 2).  Pogue did not look down at the ground before stepping out of his vehicle.  (*Id.* at ¶ 3).

After he fell, Pogue got up, walked into Speedway's store, and reported his fall.  (Def.'s Stmt. & Pl.'s Stmt. at ¶ 5).  Speedway employee Sara Morgan was working on the day in

---

[2]Erroneously numbered as the second paragraph "9" in Defendant's Stmt.

3

question.  (Morgan Affidavit, Ex. E to Def.'s Br.).

After Pogue reported that he had fallen, Morgan followed Pogue out to the location

where he had fallen and took a photo of that area.  (*Id*.).  The photo that Morgan took is attached

to her Affidavit.  (*See* Def.'s Ex. E).

Another similar photo was taken.  Pogue testified at his deposition that the ice on which

he slipped was accurately depicted in a photograph, that he had produced during discovery, that

was shown to him at his deposition:

> Q.   Okay.  I'm going to show you a photograph that was attached to your
> Answers to Interrogatories.  I will show you those as well, but tell me – I
> will show it to both you and your attorney.
> A.   Mm-hmm.
> Q.   Do you recognize that photograph?
> A.   I recognize my feet and the tire of my truck, yes.
> Q.   Okay.  Do you know who took that photograph?
> A.   No.
> Q.   Okay.  What that photograph taken on the date of the incident at issue, if
> you know?
> A.   Yes.
> Q.   *Does that photograph accurately depict the scene of the incident at the
> time it occurred?*
> A.   *Yes*.
> Q.   Is that the ice – is this the area of ice that I'm circling around with my pen
> on which you slipped and fell, sir?
> A.   Yes.

(Pogue Dep. at 24) (emphasis added).

Although Pogue testified that the above photograph accurately depicted the ice, Pogue

then testified that the ice looked like cement to him:

> Q.   Thank you.  You can see the ice visibly with your own eyes, is that
> correct, sir?
> A.   It looked like cement to me.
> Q.   It looked like cement?
> A.   (Indicating affirmative).
> Q.   I'm sorry?

> A.      It looked like cement, mm-hmm.

(*Id*.).

Morgan testified that after Pogue came in reporting that he had fallen, she followed

Pogue outside to the spot where he had fallen.  (Morgan Dep. at 30).  Morgan further testified:

> Q.      Were you able to observe upon casual inspection the ice that apparently
>         Mr. Pogue fell on ?
> A.      Yes, I seen it.
> Q.      Was it easy to observe?
> A.      After I made my way about his truck, yes.
> Q.      Was there anything covering it?
> A.      No.
> Q.      Was his car over the patch of ice?
> A.      No, he was right beside it.
> Q.      Do you think if Mr. Pogue had looked down, he would have had any
>         problem seeing the ice?
>         MR. HAMOOD: Form and foundation.
> A.      If he would have looked down, yes, but a lot of people don't look down
>         when they get out of their car.

(Morgan Dep. at 31). Morgan testified that she was not able to see the patch of ice at issue from

the window inside of the Speedway station (*Id*. at 33) but that she would have seen the ice patch

had she gone outside to the area by the pump.  (*Id*. at 34).

After reporting his fall to Morgan, Pogue walked back to the same gas pump and filled

his truck up with gas.  (Pogue Dep. at 26-27).  He then left the station.

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  No genuine issue of material fact

exists where "the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party."  *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587

(1986).  "The mere existence of a scintilla of evidence in support of the Pogue's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."
*Anderson*, 477 U.S. at 252.

The Court "must view the evidence, all facts, and any inferences that may be drawn from
the facts in the light most favorable to the non-moving party."  *Skousen v. Brighton High Sch*.,
305 F.3d 520, 526 (6th Cir. 2002).  "The court's duty to view the facts in the light most
favorable to the nonmovant does not require or permit the court to accept mere allegations that
are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th
Cir. 2009).  "This is so because the nonmovant, in response to a properly made and supported
motion for summary judgment, cannot rely merely on allegations but must set out specific facts
showing a genuine issue for trial."  *Id.*

## ANALYSIS

In its Motion for Summary Judgment, Speedway asserts that it is entitled to summary
judgment in its favor because: 1) the ice on which Pogue fell was open and obvious, because
there is evidence that shows that the ice at issue was clearly visible and other indicia suggesting
the presence of ice at the gas station.; and 2) no "special aspects" existed that would remove this
case from the application of the open and obvious danger doctrine.

## I.      Was The Ice Patch At Issue Open And Obvious?

Because this case is in federal court based upon diversity jurisdiction, the substantive law
of Michigan governs the claims in this case.  *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675
F.3d 989, 995 (6th Cir. 2012).

In Michigan, premises liability flows from the ownership, possession, or control of the
land at issue. *White v. Sunrise Senior Living Mgmt., Inc.,* 535 F. App'x 485, 486 (6th Cir. 2013)

(citations omitted).  The landowner's duty depends on the status of the injured party.   Michigan law utilizes three categories: invitees, licensees, and trespassers.  An invitee is an individual who enters the land of another for a commercial purpose. *Cote v. Lowe's Home Ctr., Inc*., 896 F.Supp.2d 637, 644 (E.D.Mich. 2012).  The parties agree that Pogue was an invitee on Speedway's premises on the day he fell.

"With regard to invitees' a landowner owes a duty to use reasonable care to protect invitees from unreasonable risks of harm posed by dangerous conditions on the owner's land." *Hoffner v. Lanctoe*, 492 Mich. 450, 460 (2012).  But "[p]erfection is neither practicable nor required by the law, and '[u]nder ordinary circumstances, the overriding public policy of encouraging people to take reasonable care for their own safety precludes imposing a duty on the possessor of land to make ordinary [conditions] 'foolproof.'" *Id.* (citations omitted).  "Thus, an integral component of the duty owed to an invitee considers whether a defect is 'open and obvious.'" *Hoffner*, 492 Mich. at 460.  "The possessor of land 'owes no duty to protect or warn' of dangers that are open and obvious because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid."  *Id*.

"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. This is an objective standard, calling for an examination of "the objective nature of the condition of the premises at issue."  *Id.*

Under Michigan law, "wintry conditions, like any other condition on the premises, may be deemed open and obvious."  *Hoffner*, 450 Mich. at 464.  In such cases, Michigan courts ask "whether individual circumstances, including the surrounding conditions, render a snow or ice

7

condition open and obvious such that a reasonably prudent person would foresee the danger." *Id*. at 464.

"Michigan courts have generally held that hazards presented by snow, snow-covered ice, and observable ice are open and obvious and do not impose a duty on the premises possessor to warn or remove the hazard." *Slaughter v. Blarney Castle Oil Co.*, 281 Mich. App. 474, 481 (2008). Here, however, Pogue characterizes the ice he slipped on at the gas station as "black ice."

The plaintiff in *Slaughter* fell at a gas station while exiting her truck. The "parking lot was paved with black asphalt, and plaintiff was not able to observe ice or snow." *Id.* at 476. In *Slaughter*, the Michigan Court of Appeals addressed the issue of whether "black ice" without the presence of snow is an open and obvious danger. *Id.* at 475. The court noted that the "overriding principle behind the many definitions of black ice is that it is either invisible or nearly invisible, transparent, or nearly transparent." *Id*. at 483. Accordingly, to find that an alleged black ice condition was open and obvious requires evidence that the ice in question: 1) "would have been visible on casual inspection before the fall;" *or* 2) that there existed "other indicia of a potentially hazardous condition." *Id*. at 483. That is, you only need one or the other for the hazard to be found open and obvious.

As to the other indicia, the court explained that "Michigan winter residents know that each day can bring dramatically different weather conditions, ranging from blizzard conditions, to wet slush, to a dry, clear, and sunny day. As such, the circumstances and specific weather conditions present at the time of plaintiff's fall are relevant." *Id*.

In addition,"[i]n the aftermath of *Janson*, the Michigan courts have taken a fairly broad

8

approach in considering what 'other indicia of a potentially hazardous condition' will support an open and obvious danger finding in black ice cases." *Shane v. Accor North America, Inc*., 2013 WL 4070471 at * (E.D. Mich. 2013).[3]

As Judge Rosen discussed in another recent slip and fall case, *Callewaert v. Sam's East, Inc*., 2016 WL 140 7843 (E.D. Mich. 2016), Michigan courts frequently find alleged black ice to be an open and obvious condition.  In such cases, the court finds the ice open and obvious where there is evidence that a person looking at the ice can see it and where there is evidence of weather conditions that are conducive to ice formation, such as freezing temperatures or snow on the ground.

In its Motion for Summary Judgment, Speedway asserts that the alleged black ice was an open and obvious condition because there is evidence (photographs and witness testimony) that

---

[3]As summarized in *Shane*: "In *Janson*, the plaintiff slipped and fell on black ice in the defendant's parking lot. The trial court concluded that the icy conditions in the defendant's parking lot were open and obvious." *See Janson v. Sajewski Funeral Home, Inc*., 285 Mich.App. 396, 398 (2009). "The Court of Appeals reversed. Though the appellate court acknowledged that the weather records and testimony indicated that the temperature remained below freezing on the day of the incident and it had snowed earlier in the day, it found application of the open and obvious danger doctrine inappropriate because it found "nothing in the record to show that plaintiff saw anyone else slip on the parking lot surface, nor [was there] any indication that there was any snow around the area where plaintiff fell." *Id*. at 400, 775 N.W.2d 148, 775 N.W.2d at 151."  But the "Michigan Supreme Court reversed" and reinstated the trial court's summary disposition ruling. *Janson*, 486 Mich. at 935. The Supreme Court determined that the Court of Appeals erred in failing to take account of all of the "specific weather conditions present at the time of the plaintiff's fall," as required by *Slaughter* in considering "indicia of a potentially hazardous condition." *Id*. Specifically, the Court found that the lower court failed to take account of the fact that the plaintiff's slip and fall "occurred in winter, with temperatures at all times below freezing, snow present around the defendant's premises, mist and light freezing rain falling earlier in the day, and light snow falling during the period prior to the plaintiff's fall in the evening." *Id*. According to the Supreme Court, "These wintry conditions by their nature would have alerted an average user of ordinary intelligence to discover the danger upon casual inspection." *Id*.

the ice was visible upon casual inspection and, additionally, there were other indicia of a potentially hazardous condition as there were obvious winter conditions. The Court agrees.

Notably, Pogue testified that he never looked down before exiting his vehicle. Thus, this is not a case where the plaintiff testified that he made a casual inspection of the area but did not see the ice because it had a translucent appearance. Pogue's assertion that the hazard was "black ice" and would have been unable to be seen by him upon casual inspection "is mere speculation and not supported by the record. In other words, plaintiff failed to present evidence beyond mere speculation supporting that the hazard was not identifiable upon casual inspection" because the evidence shows that Pogue never looked at the ground before he fell. *Zyreck v. Costco Wholesale Corp.*, 2014 WL 2933811 (Mich. App. 2014).

Moreover, Speedway has presented evidence to show that the ice was visible upon casual inspection and that Pogue would have seen it had he looked at the ground. Significantly, photographs were taken within minutes after Pogue fell and, viewed objectively, those photographs show a patch of ice. Pogue testified that the photographs accurately depicted the condition as it appeared on the date of the fall. In addition, Morgan testified that after she went over to the area by the pump, she could see the ice. Morgan testified that if Pogue had looked down, he would have seen the ice.

In addition, there is evidence of weather conditions on that date in question that are conducive to ice formation. Pogue is a Michigan resident and he is therefore familiar with winter conditions and the potential hazards they bring. Pogue testified that it was "cold" out on the date at issue and the photos show that he was wearing a winter coat. Weather reports from the date of the incident, and the days preceding it, indicate that nearby Detroit Metro Wayne

County Airport had temperatures ranging from 25 to 43 degrees.  (Def.'s Stmt. & Pl.'s Stmt. at ¶ 9; Def.'s Ex. G).  Although there was no precipitation on the date at issue, the weather records indicate that there were *twelve inches of snow* on the ground.  The still photographs show obvious snow mounds, in various areas, on the grounds at the gas station.  (Def.'s Ex. C).

Given the evidence presented by Defendants, under an objective standard, a reasonable person in Pogue's position would have been able to discover the ice patch upon casual inspection.   The ice patch at the gas station was therefore open and obvious.  *See, e.g.*, *Zyreck v. Costco Wholesale Corp*., 2014 WL 2933811 (Mich. App. 2014) (affirming grant of summary disposition because ice was open and obvious where photographs submitted to the trial court showed the ice was visible and defendant's employee testified the ice was visible upon casual inspection); *Kosinski v. Crosswinds Cond. Assoc*., 2016 WL 299736 (Mich. App. 2016) (affirming trial court's grant of summary disposition because ice was open and obvious where witnesses testified that ice was visible, the plaintiff could see the ice after falling, and there were wintry conditions that would alert an average person to discover the ice);  *Toney v. Jones Lang LaSalle Americas, Inc*., 2016 WL 2609650 (Mich. App. 2016) (affirming trial court's grant of summary disposition because ice was open and obvious where there had been snow on the ground, there was photo of parking lot taken shortly after fall, plaintiff admitted that the photo showed visible ice but testified the lighting and angle must have been off because she did not see it).

If "the condition is open and obvious, a plaintiff who is injured by the condition may avoid summary [judgment] only if there are special aspects to the condition."  *Hoffner*, 492 Mich. at 464.

11

**II.    Did Any "Special Aspects" Exist That Would Remove This Case From The Application Of The Open And Obvious Doctrine?**

In attempting to avoid a summary judgment ruling in favor of Speedway, Pogue argues that this case presents "special aspects" which make the open and obvious danger doctrine inapplicable.

The Michigan Supreme Court has recognized that if "special aspects" of the hazard at issue make even an open and obvious risk unreasonably dangerous, the landowner will have a duty to take reasonable measures to protect the invitees. *Lugo v. Ameritch Corp., Inc*., 464 Mich. 512, 517 (2001). The Court recognized two situations whereby a landowner has a duty to protect invitees from an open and obvious hazard: 2) where the danger, while avoidable, poses an unreasonably high risk of severe harm; and 2) where the danger is effectively unavoidable. *Id*. at 518-19.

Here, Pogue does not argue that the ice posed an unreasonably high risk of severe harm.[4] Rather, he contends that the hazard was effectively unavoidable because Pogue "was compelled to fill his truck with gas on the date of the incident."  (Pl.'s Br. at 17).  Pogue relies on *Robertson v. Blue Water Oil Co*, 268 Mich. App. 588 (2005) and a recent published decision, *Lymon v. Freeland*, __ Mich. App. __, 2016 WL 1228516 (March 29, 2016).

As Speedway notes, the Michigan Supreme Court effectively disavowed *Robertson* in *Hoffner*, stating "to the extent that Michigan courts in *Robertson*" "alluded to a new breed of business invitee protection, *we disavow* that reasoning as inconsistent with traditional principles

---

[4]Even if Pogue had made that argument, it would fail.  "Slipping and falling on an ordinary parking lot does not present an unreasonably high risk of severe harm."  *Zyrek, supra*, at * 4.

12

of premises liability law." *Hoffner*, 492 Mich. at 472 (emphasis added).  The Michigan Supreme

Court clarified that:

> when confronted with an issue concerning an open and obvious hazard, Michigan courts should hew closely to the principles previously discussed. It bears repeating that *exceptions to the open and obvious doctrine are narrow and designed to permit liability for such dangers only in limited, extreme situations*. Thus, an "unreasonably dangerous" hazard must be just that—not just a dangerous hazard, but one that is unreasonably so. And it must be more than theoretically or retrospectively dangerous, because even the most unassuming situation can often be dangerous under the wrong set of circumstances. *An "effectively unavoidable" hazard must truly be, for all practical purposes, one that a person is required to confront under the circumstances. A general interest in using, or even a contractual right to use, a business's services simply does not equate with a compulsion to confront a hazard and does not rise to the level of a "special aspect" characterized by its unreasonable risk of harm.*

*Id*. (emphasis added).

In *Lymon*, the Michigan Court of Appeals was recently confronted with a case wherein an

open and obvious hazard existed but the plaintiff asserted that the risk was effectively

unavoidable.  In *Lymon*, the court noted that the Supreme Court gave the following example of

an effectively unavoidable hazard in *Lugo:*

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable.

*Lymon, supra* at 5 (quoting example from *Lugo, supra*).  The court then noted that in "*Hoffner*,

our Supreme Court reiterated that an 'effectively unavoidable' condition must be an inherently

dangerous hazard that a person is inescapably required to confront under the circumstances.'" *Id*.

(quoting *Hoffner, supra*).

The Michigan Court of Appeals concluded that there was a genuine issue of fact as to

13

whether the plaintiff in the case at bar was compelled to confront the hazard under the very

unique facts presented.  The plaintiff was a healthcare provider who provided in-home care for

an elderly woman who suffered from dementia and Parkinson's disease and required "round-the-

clock care" and "could not be left alone."  *Id*. at 1.  On the day in question, the plaintiff was

scheduled to relieve the prior shift and knew that the patient's adult daughter was out of town for

the weekend.  The driveway to the home was covered in snow with ice build-up underneath and

the yard appeared to be as well.  The court concluded:

> Contrary to *Hoffner*, there was a question of fact as to whether plaintiff was
> compelled to confront the hazardous risk posed by the snowy and icy conditions
> at the Freedland residence. Unlike the plaintiff in *Hoffner,* here, a reasonable juror
> could conclude that plaintiff did not have a choice as to whether to confront the
> icy conditions. As a home health care aide, plaintiff did not have the option of
> abandoning her patient, an elderly woman who suffered from dementia and
> Parkinson's disease. Plaintiff did not confront the hazard merely because she
> desired to participate in a recreational activity, but rather, a rational juror could
> conclude that she was "compelled by extenuating circumstances" and had "no
> choice" but to traverse the risk. *Id.* at 473.
>
> In short, plaintiff arrived at a premises where she was surrounded by slippery
> winter conditions. Our review of the record leads us to conclude that all routes to
> the home were covered in ice and snow. Plaintiff was faced with two open and
> obvious hazards that posed a danger to her safety. While other individuals were
> able to successfully navigate the slippery yard to access the home, reasonable
> minds could differ as to whether traversing the yard provided a viable means by
> which plaintiff could have effectively avoided the slippery conditions.
> Accordingly, the trial court did not err in denying defendants' motion for
> summary disposition because there was a genuine issue of material fact as to
> whether the open and obvious hazard in this case contained special aspects such
> that defendants retained a duty to "exercise reasonable care to diminish the
> hazards of ice and snow accumulation" on the driveway and exercise "reasonable
> measures ... within a reasonable time after an accumulation of ice and snow to
> diminish the hazard of injury to the invitee." *Id*. at 460.

*Id*. at 6.

This Court previously found that an issue of fact existed as to whether a hazard was

14

effectively unavoidable in *Clapper v. HVM, LLC*, Case No. 06-10093.  In that case, the plaintiff was staying in a hotel room on one of the upper floors when the electricity went out for an extended period of time and the plaintiff had no choice but to walk down a darkened staircase in order to check out of the hotel.

In all of the above examples of when the exception may apply, the invitee is able to observe the obvious hazard, but under the unique or extreme facts is required to confront the hazard anyway.  Thus, the theoretical invitee in the *Lugo* example sees the open and obviously hazardous standing water covering the floor surrounding the store's only exit but has no choice but to walk through the water to leave the store; the plaintiff in *Clapper* observed the open and obviously hazardous darkened stairwell leading to the main floor of the hotel but given the extended loss of power, had no choice but to walk down that darkened stairwell to check out of the hotel; and the plaintiff healthcare provider in *Lymon* sees that all routes to the home of her patient who requires "round-the-clock care" are snow and ice covered, but has to traverse those hazardous conditions anyway because she cannot abandon her particularly vulnerable patient.

Here, however, Pogue did not observe the hazard (the ice patch) before falling.  That is because Pogue did not look at the ground before getting out of his truck and falling. Thus, unlike the above examples, this was not a scenario wherein Pogue actually observed the ice patch near the gas pump but because of some extreme factual circumstance was required to walk on that patch of ice anyway.  But in order to consider whether this *exception to the open and obvious doctrine* should be made in this case, the Court presumes that Pogue could observe the open and obvious hazard upon casual inspection and then consider whether the factual circumstances were so extreme or unusual that he was effectively compelled or "inescapably required" to traverse

15

over the hazard anyway.  He was not.  If Pogue had noticed the obvious ice patch, among other

things,[5] Pogue "could have stepped around the affected area."  *Zyrek, supra*, at * 4.  Indeed, after

Pogue reported his fall to Morgan inside the station, Pogue walked back to the same gas pump,

was able to avoid the ice patch, successfully pumped gas into his truck, and left.

Accordingly, this case does not present any "special aspects" which make the open and

obvious danger doctrine inapplicable. Speedway is entitled to summary judgment in its favor.

## CONCLUSION & ORDER

For the reasons set forth above IT IS ORDERED that Defendant's Motion for Summary

Judgment is GRANTED and this action shall be dismissed with prejudice.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  September 20, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on
September 20, 2016, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager

---

[5]He also could have gone to another gas station, waited for another pump that did not
have any ice near it to become available, etc.

16

17